**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO
DJudge Raymond P. Moore**

Civil Action No. 14-cv-02917-RM

ROBERT C. JOHNSON,

     Applicant,

v.

JAMES FALK, Warden, and
THE ATTORNEY GENERAL OF THE STATE OF COLORADO,

     Respondents.

---

## ORDER DENYING WRIT OF HABEAS CORPUS

---

Applicant, Robert C. Johnson, is a prisoner in the custody of the Colorado Department of Corrections at the Sterling Correctional Facility in Sterling, Colorado. Mr. Johnson initiated this action by filing *pro se* an Application for a Writ of Habeas Corpus Pursuant to 28 U.S.C. § 2254 (ECF No. 1). On November 14, 2014, Mr. Johnson filed an amended Application for a Writ of Habeas Corpus Pursuant to 28 U.S.C. § 2254 (ECF No. 6). Mr. Johnson is challenging the validity of his conviction of escape in Fremont County District Court case number 07CR350.

On March 23, 2015, Respondents filed their Response to the Amended Application (ECF No. 23). On May 5, 2015, Mr. Johnson filed his reply (ECF No. 31) to the Response.

The Court must construe the amended application and other papers filed by Mr. Johnson liberally because he is not represented by an attorney. *See Haines v. Kerner*, 404 U.S. 519, 520-21 (1972); *Hall v. Bellmon*, 935 F.2d 1106, 1110 (10th Cir. 1991). However, the Court should not be

n advocate for a *pro se* litigant.  *See Hall*, 935 F.2d at 1110.  For the reasons stated below, the Application for Writ of Habeas Corpus will be denied.

### A.   Relevant Factual and Procedural History

Mr. Johnson was convicted of second degree murder in 1973 and sent to prison.  He escaped two years later.  In 2007 Mr. Johnson was returned to custody in Colorado and charged with escape. Although the trial court dismissed the escape charge on constitutional speedy trial grounds, the Colorado Court of Appeals reversed and remanded for reinstatement of the charge.  *See People v. Johnson*, 09CA0127 (Colo. App. Aug. 5, 2010) (unpublished) (ECF No. 11-10) (*Johnson I*). Following a jury trial, Mr. Johnson was convicted of escape and sentenced to sixteen years in prison. The judgment of conviction was affirmed on direct appeal.  *See People v. Johnson*, 327 P.3d 305 (Colo. App. 2013) (*Johnson II*).  On May 19, 2014, the Colorado Supreme Court denied Mr. Johnson's petition for writ of certiorari.  (*See* ECF No. 11-2.)

Mr. Johnson asserts six claims for relief in the amended application.  He specifically contends his constitutional right to a speedy trial was violated (claim 1); he was denied due process because he was charged with escape after the statute of limitations expired (claim 2); he was denied due process because the trial court improperly excluded relevant evidence (claim 3); he was denied due process because the trial court refused to instruct the jury on the "choice of evils" defense (claim 4); he was denied due process as a result of outrageous government conduct (claim 5); and his rights under the Double Jeopardy Clause were violated (claim 6).

### B. Standard of Review

In the course of reviewing state criminal convictions in federal habeas corpus proceedings, a federal court does not sit as a superstate appellate court.  *See Estelle v. McGuire*, 502 U.S. 62, 67-

68 (1991); *Lewis v. Jeffers*, 497 U.S. 764, 780 (1990); *Pulley v. Harris*, 465 U.S. 37, 41 (1984).

"When a federal district court reviews a state prisoner's habeas [application] pursuant to 28 U.S.C.

§ 2254 it must decide whether the [applicant] is 'in custody in violation of the Constitution or laws

or treaties of the United States.'  The court does not review a judgment, but the lawfulness of the

[applicant's] custody simpliciter." *Coleman v. Thompson*, 501 U.S. 722, 730 (1991). *See also Davis*

*v. Ayala,*  135 S.Ct. 2187, 2202 (2015) ("The role of a federal habeas court is to guard against

extreme malfunctions in the state criminal justice systems, not to apply de novo review of factual

findings and to substitute its own opinions for the determination made on the scene by the trial

judge.") (internal quotations and citations omitted).

Specifically, the Habeas Corpus Statute, 28 U.S.C. § 2254(d), provides that a writ of habeas

corpus may not be issued with respect to any claim that was adjudicated on the merits in state court

unless the state court adjudication:

> (1)  resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or

> (2)  resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

28 U.S.C. § 2254(d).  Mr. Johnson bears the burden of proof under § 2254(d). *See Woodford v.*

*Visciotti*, 537 U.S. 19, 25 (2002) (*per curiam*).

The Court reviews claims of legal error and mixed questions of law and fact pursuant to 28

U.S.C. § 2254(d)(1). *See Cook v. McKune*, 323 F.3d 825, 830 (10th Cir. 2003).  The threshold

question the Court must answer under § 2254(d)(1) is whether Mr. Johnson seeks to apply a rule of

law that was clearly established by the Supreme Court at the time his conviction became final. *See*

*Williams v. Taylor*, 529 U.S. 362, 390 (2000).  Clearly established federal law "refers to the

holdings, as opposed to the *dicta*, of [the Supreme] Court's decisions as of the time of the relevant state-court decision." *Id*. at 412.  Furthermore,

> clearly established law consists of Supreme Court holdings in cases where the facts are at least closely-related or similar to the case *sub judice*.  Although the legal rule at issue need not have had its genesis in the closely-related or similar factual context, the Supreme Court must have expressly extended the legal rule to that context.

*House v. Hatch*, 527 F.3d 1010, 1016 (10th Cir. 2008).  A legal principle is "clearly established" within the meaning of this provision only when it is embodied in a holding of the Supreme Court. *Thaler v. Haynes*, 559 U.S. 43, 47 (2010).   If the circumstances of a case are only similar to Supreme Court precedents, then the state court's decision is not "contrary to" the holdings in those cases.  *Woods v. Donald,* ___ U.S. ___, 135 S.Ct. 1372, 1377 (2015) ("Because none of our cases confront the specific question presented by this case, the state court's decision could not be contrary to any holding from this Court.") (quotations omitted).  If there is no clearly established federal law, that is the end of the Court's inquiry pursuant to § 2254(d)(1).  *See Waddington v. Sarausad*, 555 U.S. 179, 191 (2009).[1]

If a clearly established rule of federal law is implicated, the Court must determine whether the state court's decision was contrary to or an unreasonable application of that clearly established rule of federal law.  *See Williams*, 529 U.S. at 404-05.

> A state-court decision is contrary to clearly established federal law if:  (a) "the state court applies a rule that contradicts the governing law set forth in Supreme Court cases"; or (b) "the state court confronts a set of facts that are materially indistinguishable from a decision of the Supreme Court and nevertheless arrives at a result different from [that] precedent." *Maynard* [*v. Boone*], 468 F.3d [665,] 669

---

[1]   *See also Donald*, 135 S.Ct. 1378 ("All that matters here, and all that should have mattered to the Sixth Circuit, is that we have not held that *Cronic* applies to the circumstances presented in this case.  For that reason, federal habeas relief based upon *Cronic* is unavailable.")

> [(10th Cir. 2006)] (internal quotation marks and brackets omitted) (quoting *Williams*, 529 U.S. at 405). "The word 'contrary' is commonly understood to mean 'diametrically different,' 'opposite in character or nature,' or 'mutually opposed.'" *Williams*, 529 U.S. at 405 (citation omitted).
>
> A state court decision involves an unreasonable application of clearly established federal law when it identifies the correct governing legal rule from Supreme Court cases, but unreasonably applies it to the facts. *Id*. at 407-08.

*House*, 527 F.3d at 1018.

The Court's inquiry pursuant to the "unreasonable application" clause is an objective inquiry. *See Williams*, 529 U.S. at 409-10. "[A] federal habeas court may not issue the writ simply because that court concludes in its independent judgment that the relevant state-court decision applied clearly established federal law erroneously or incorrectly. Rather that application must also be unreasonable." *Id*. at 411. "[A] decision is 'objectively unreasonable' when most reasonable jurists exercising their independent judgment would conclude the state court misapplied Supreme Court law." *Maynard*, 468 F.3d at 671. Furthermore,

> [E]valuating whether a rule application was unreasonable requires considering the rule's specificity. The more general the rule, the more leeway courts have in reaching outcomes in case-by-case determinations. [I]t is not an unreasonable application of clearly established Federal law for a state court to decline to apply a specific legal rule that has not been squarely established by [the Supreme] Court.

*Richter*, 562 U.S. at 101 (internal quotation marks omitted). In conducting this analysis, the Court "must determine what arguments or theories supported or . . . could have supported[] the state court's decision" and then "ask whether it is possible fairminded jurists could disagree that those arguments or theories are inconsistent with the holding in a prior decision of [the Supreme] Court." *Id*. Under this standard, "only the most serious misapplications of Supreme Court precedent will be a basis for relief under § 2254." *Maynard*, 468 F.3d at 671; *see also Richter*, 562 U.S. at 102 (stating that "even a strong case for relief does not mean the state court's contrary conclusion was unreasonable").

As a condition for obtaining habeas corpus from a federal court, a state prisoner must show that the state court's ruling on the claim being presented in federal court was so lacking in justification that there was an error well understood and comprehended in existing law beyond any possibility for fairminded disagreement.

*Richter*, 562 U.S. at 103.

This deference was explained in *Renico v. Lett*, 599 U.S. 766 (2010) where the Supreme Court reviewed the Court of Appeals for the Sixth Circuit's grant of a writ of habeas corpus to a defendant who was retried for murder following the trial judge's grant of a mistrial after the jury had deliberated for at least four hours following a relatively short, and far from complex, trial. The Michigan Supreme Court had concluded there was no violation of the Double Jeopardy Clause because the trial court exercised its sound discretion. The federal district court granted a writ of habeas corpus and the Sixth Circuit affirmed, both concluding that the trial court's declaration of a mistrial constituted an abuse of discretion because there was no manifest necessity. The Supreme Court reversed.

It is important at the outset to define the question before us. That question is not whether the trial judge should have declared a mistrial. It is not even whether it was an abuse of discretion for her to have done so-the applicable standard on direct review. The question under AEDPA is instead whether the determination of the Michigan Supreme Court that there was no abuse of discretion was "an unreasonable application of ... clearly established Federal law." § 2254(d)(1).

*Lett*, 559 U.S. at 772-73. The Supreme Court further instructed:

It is not necessary for us to decide whether the Michigan Supreme Court's decision-or, for that matter, the trial judge's declaration of a mistrial-was right or wrong. The latter question, in particular, is a close one. As Lett points out, at a hearing before the Michigan Court of Appeals, the state prosecutor expressed the view that the judge had in fact erred in dismissing the jury and declaring a mistrial. The Michigan Supreme Court declined to accept this confession of error, and in any event-for the reasons we have explained—**whether the trial judge was right or wrong is not the pertinent question under AEDPA**.

*Id*. at 778, n. 3 (emphasis added) (internal citation omitted).   *See also Schriro v. Landrigan*, 550 U.S. 465, 473 (2007); *Lockyer v. Andrade*, 538 U.S. 63, 75 (2003) (it is "not enough that a federal habeas court, in its independent review of the legal question, is left with a 'firm conviction' that the state court was 'erroneous.' ").

In addition, review under § 2254(d)(1) is limited to the record that was before the state court that adjudicated the claim on the merits. *Cullen v. Pinholster*, 563 U.S. 170, 131 S.Ct. 1388, 1398 (2011) ("If a claim has been adjudicated on the merits by a state court, a federal habeas petitioner must overcome the limitation of § 2254(d)(1) on the record that was before that state court.").

In making this determination, a federal court must accord a presumption of correctness to a state court's factual findings, which a petitioner can rebut only by clear and convincing evidence. 28 U.S.C. § 2254(e).  Where a state court's factual findings are not made explicit, a federal court's "duty is to begin with the [state] court's legal conclusion and reason backward to the factual premises that, as a matter of reason and logic, must have undergirded it." *Campbell v. Vaughn*, 209 F.3d 280, 289 (3d Cir. 2000).  In determining what implicit factual findings a state court made in reaching a conclusion, a federal court must infer that the state court applied federal law correctly. *Marshall v. Lonberger*, 459 U.S. 422, 433 (1982).  "The standard is demanding but not insatiable . . . [because] '[d]eference does not by definition preclude relief.'" *Miller-El v. Dretke*, 545 U.S. 231, 240 (2005) (quoting *Miller-El v. Cockrell*, 537 U.S. 322, 340 (2003)).

For federal habeas claims not adjudicated on the merits in state-court proceedings, the Court must exercise its independent judgment. *McCracken v. Gibson*, 268 F.3d 970, 975 (10th Cir. 2001).  Any state-court findings of fact that bear upon the claim are entitled to a presumption of correctness rebuttable only by clear and convincing evidence. *Hooks v. Ward*, 184 F.3d 1206, 1223 (10th Cir.

1999) (applying § 2254(e)(1)'s presumption of correctness to state-court factual findings bearing upon the claim, even though the claim was not adjudicated on the merits by the state court). Petitioner's claims will be reviewed in accordance with the standards set forth above.

### C.  Speedy Trial Claim

In claim 1, Mr. Johnson asserts that his right to a speedy trial was violated.  The Sixth Amendment provides that "[i]n all criminal prosecutions, the accused shall enjoy the right to a speedy ... trial."  The fact that the delay was lengthy, standing alone, does not make the delay unreasonable.  In *Barker v. Wingo*, 407 U.S. 514 (1972), the Supreme Court held that, in determining whether the right to a speedy trial has been violated, courts must employ a balancing test on an *ad hoc* basis using the following four factors:  1) length of delay; 2) the reason for the delay; 3) the defendant's assertion of his right; and 4) prejudice to the defendant.  No one of the factors is necessary or sufficient to conclude a violation has occurred.  *Id*. at 530.  Instead, the factors are related and must be considered together along with other relevant circumstances.  *Id*.  A court should look at all of the factors, including the nature of the charges.  *Id*. at 531.  The first factor, length of delay, functions as a triggering mechanism and the remaining factors are examined only if the delay is long enough to be presumptively prejudicial.  *Id*.

With respect to the first factor, the speedy trial clause does not apply to the period before a defendant is indicted, arrested or otherwise officially accused.  *United States v. MacDonald*, 456 U.S. 1, 6-7 (1982).  Also, the period of delay excludes the time between a good faith dismissal of a charge and a subsequent good faith refiling of that charge.  *Id*. at 7, 10 (once charges are dismissed, the accused is "legally and constitutionally in the same posture as though no charges had been made.");  *see also United States v. Loud Hawk*, 474 U.S. 302, 310 (1986) (following dismissal of

indictment, speedy trial right did not attach simply because the investigation was ongoing; only the "actual restraints imposed by arrest and holding to answer a criminal charge . . . engage the particular protections of the speedy trial provision of the Sixth Amendment") (quotation omitted).

While each of the factors is relevant, "[t]he flag all litigants seek to capture is the second factor, the reason for delay." *Loud Hawk*, 474 U.S. at 315. The Supreme Court has explained that:

> different weights should be assigned to different reasons. A deliberate attempt to delay the trial in order to hamper the defense is particularly serious, and should be weighted heavily against the government. A more neutral reason such as negligence or overcrowded courts should be weighted less heavily but nevertheless should be considered since the ultimate responsibility for such circumstances must rest with the government rather than with the defendant. At the other end of the spectrum, a valid reason, such as a missing witness, should serve to justify appropriate delay.

*Boyer v. Louisiana*, 133 S.Ct. 1702, 1706 (2013) (internal quotations and citations omitted). In applying *Barker*, a court must determine whether the government or the criminal defendant is more to blame for the delay. *Doggett v. United States*, 505 U.S. 647, 651 (1992).

The third factor is whether the defendant asserted his right to a speedy trial. If the defendant has asserted his right, that is given strong weight in deciding whether there has been a speedy trial violation. *Barker,* 407 U.S. at 531-32; *United States v. Seltzer*, 595 F.3d 1170, 1178 (10th Cir. 2010). These assertions, however, must be viewed in the light of a defendant's other conduct. *Loud Hawk*, 474 U.S. at 314. *See also United States v. Tranakos*, 911 F.2d 1422, 1428 (1990) ("We are unimpressed by a defendant who moves for dismissal on speedy trial grounds when his other conduct indicates a contrary desire"); *United States v. Blanco*, 861 F.2d 773, 778 (2d Cir. 1988) (defendant's assertion of speedy trial claim "is seriously undermined" when the defendant's fugitivity is a primary cause of the delay); *United States v. Deleon*, 710 F.2d 1218, 1222 (7th Cir. 1983) (filing of speedy trial claim after 4 years of fugitivity, and only thirty-nine days before trial, undermined the claim).

Moreover, delays attributable to motions filed and continuances sought by the defendants do not weigh against the government. *Loud Hawk*, 474 U.S. at 316–17.

The final factor is prejudice. The individual claiming the Sixth Amendment violation has the burden of showing prejudice. *United States v. Seltzer*, 595 F.3d 1170, 1179 (10th Cir. 2010). Prejudice is assed in light of the three main interests which the speedy trial right was designed to protect: 1) the prevention of oppressive pretrial incarceration; 2) the minimization of anxiety and concern of the accused; and 3) minimization of the possibility that the defense will be impaired. *Id*.

> Of these interests, the most serious is the 'hindrance of the defense' because the inability of a defendant to adequately prepare his case skews the fairness of the entire system. Because the seriousness of a post-accusation delay worsens when the wait is accompanied by pretrial incarceration, oppressive pretrial incarceration is the second most important factor.

*Id*. (quotations omitted). However, when a defendant makes only a general allegation that the passage of time made it more difficult to present a defense, points to no specific prejudice he claims he suffered from the delay and does not claim that any specific witness or evidence was somehow rendered unavailable or less persuasive because of the passage of time, this factor weighs against finding that defendant's right to a speedy trial was violated. *Castro v. Ward*, 138 F.3d 810, 820 (10th Cir. 1998). *See also United States v. Harris*, 376 F.3d 1282, 1291 & n.7 (11th Cir. 2004) (rejecting speedy trial claim in part because defendant was free while awaiting trial and "offered nothing to suggest either that his defense was impaired … or that he suffered some especial anxiety as a result of the delay"); *Look v. Amaral*, 725 F.2d 4, 8 (1st Cir. 1984) (where defendant was free prior to trial, his failure to even inquire into the status of the case showed he lacked "the simplest and most obvious manifestation of anxiety one seeking speedy resolution of charges might be expected to show"). Moreover, in order to show prejudice, a defendant must describe evidence lost because of

*government* delay. *United States v. Moriarty*, 922 F.2d 1464, 1472 (10th Cir. 1991) (emphasis added).

Although the trial court granted Mr. Johnson's motion to dismiss his criminal action based on a speedy trial violation, the Colorado Court of Appeals reversed this determination and ruled as follows.

## II. Constitutional Right to a Speedy Trial

A defendant in a criminal case has a right to a speedy trial under the Sixth Amendment to the United States Constitution and article II, section 16 of the Colorado Constitution. The right is "not primarily intended to prevent prejudice to the defense caused by passage of time," but rather to "minimize the possibility of lengthy incarceration prior to trial, to reduce the lesser, but nevertheless substantial, impairment of liberty imposed on an accused while released on bail, and to shorten the disruption of life caused by arrest and the presence of unresolved criminal charges." *United States v. MacDonald*, 456 U.S. 1, 8 (1982).

Whether a defendant's constitutional right to a speedy trial has been denied is determined by an ad hoc balancing of four factors: the length of the trial delay, the reason for the delay, whether the defendant asserted his right to a speedy trial, and any prejudice to the defendant from the delay. Although these factors must be considered in combination, the length of the delay must be at least presumptively prejudicial before further inquiry into the other factors is warranted. We review both the conduct of the defendant and the prosecution, keeping in mind that the defendant has the burden of proving that his constitutional speedy trial right has been denied.

We will not disturb the district court's factual findings underlying its constitutional speedy trial determination if they are supported by the record. However, we review its application of the four *Barker* factors *de novo*.

### A. Length of Delay

The constitutional right to a speedy trial attaches at the time a defendant is either arrested or formally accused by a charging document, including a criminal complaint, information, or indictment. The constitutional right to a speedy trial does not, however, include the right to a speedy arrest or indictment. Here, defendant asserts, and the People do not dispute, that his right to speedy trial attached in 1975. For purposes of this appeal, we thus begin our analysis by examining the delay between the filing of the original complaint in 1975 and the order granting dismissal in 2008.

There is no established time period that automatically constitutes undue delay. Nevertheless, we agree with the district court that the delay here is sufficiently lengthy to warrant inquiry into the remaining *Barker* factors.

## B. Reasons for the Delay

A defendant's status as a fugitive will not relieve the state of its Sixth Amendment obligations. Nevertheless, a court need not ignore a defendant's fugitive status in considering whether there has been a violation of his constitutional right to a speedy trial. Rather, delays caused by a defendant's avoidance of the criminal justice system can only be attributed to the defendant. Furthermore, delay caused by negligence or oversight by the prosecution does not weigh as heavily in favor of finding a speedy trial violation as does delay occasioned by a deliberate effort to undermine the defendant's speedy trial rights.

Here, after defendant's escape, he lived in another state under an assumed name and Social Security number. During this time, Colorado authorities took the following steps to bring him to trial: (1) they timely filed a complaint and obtained an arrest warrant; (2) they maintained registration of defendant on both national and state registers, thereby alerting law enforcement officials across the country of his fugitive status; and (3) a DOC investigator obtained an administrative warrant for defendant's arrest in 2001 and took additional investigatory steps. After Nevada authorities located defendant in 2007, he was returned to Colorado, whereupon the People filed a new complaint and information.

Defendant claims that the state was negligent in failing to return him to Colorado earlier because he was arrested in California on a charge of public drunkenness in 1990, and fingerprinted in connection with that charge. He asserts that the practice of the California authorities would have been to notify Colorado of the fingerprint match. However, there is no evidence of such notification. Indeed, the district court concluded that "the system, at a minimum, did not function" in this regard. And a DOC investigator testified that California authorities had been unable to locate defendant in 1990 after the FBI informed them defendant was a fugitive. In any event, there is nothing in the record to suggest that any failure in this regard, or any other delay caused by Colorado authorities, was intentional or brought about for tactical advantage.

On balance, we conclude defendant did not demonstrate that Colorado authorities so failed to exercise diligence in attempting to locate and apprehend him that their ineffectiveness outweighs defendant's deliberate evasion of authorities.

## C. Defendant's Assertion of Right

A defendant does not waive his constitutional right to a speedy trial merely

by failing to demand a speedy trial. Nevertheless, we consider whether the defendant diligently sought to resolve the outstanding charges.

Here, the district court found that defendant invoked his right when he filed the 2008 motion to dismiss. Defendant testified that he consulted a California attorney while he was a fugitive, but was advised against notifying the Colorado authorities of his whereabouts. It is significant that defendant did not seek resolution of the outstanding charges in the thirty-two years before he was located in Nevada.

### D. Prejudice to Defendant

The Supreme Court has identified three fundamental interests that the speedy trial right is intended to promote: (1) to prevent oppressive pretrial incarceration; (2) to minimize anxiety and concern of the accused; and (3) to limit the possibility that the defense will be impaired. *Barker*, 407 U.S. at 532.

Here, defendant alleged two types of prejudice arising from the delay. First, he stated that he suffered anxiety that his whereabouts would be discovered and he would be arrested and returned to Colorado after he was arrested in California in 1990. Second, he claimed that he had escaped because the prison warden and prison guards told him of threats on his life, but that he had been "unable to find a single living witness" who could testify in support of his proposed "choice of evils" defense.

We first note that allegations of anxiety and the disappearance of witnesses must be substantiated in order to support a finding of prejudice. Further, the People correctly note that, because defendant did not turn himself into authorities once he was free from danger, he potentially eliminated the possibility of succeeding on his duress or choice of evils defense.

Under all of these circumstances, we conclude defendant was not denied his constitutional right to speedy trial.

The order of dismissal is reversed and the case remanded with directions to reinstate the charge, without prejudice to defendant's right to pursue other grounds for dismissal of the charge.

ECF No. 11-10 (some internal citations and quotations omitted).

After reviewing the record, I find that the Colorado Court of Appeals applied the appropriate factors and did not reach an unreasonable conclusion. Accordingly, I find that the conclusion of the Colorado Court of Appeals that Applicant was not denied his right to a speedy trial is not an unreasonable application of Supreme Court precedent, nor an unreasonable determination in light

of the facts presented.  Therefore, Applicant is not entitled to habeas relief on this claim.  *Cf. United States v. Padilla*, 819 F.2d 952, 964 (10th Cir. 1987) (government's inability to locate the defendant, despite efforts to do so, excused delay between indictment and arrest).

### D. Statue of Limitations

Mr. Johnson's second claim is that he was denied due process because he was charged with escape after the statute of limitations expired.  Specifically, in reviewing this claim, the CCA held that the crime of escape was as an offense that continues until the escapee has been returned to custody or the attempt to escape has been thwarted or abandoned.  *People v. Johnson*, 327 P3d 305, 308 (2013).  Because the Court concluded that escape was a continuing offense, it held that the statute of limitations did not begin to run until defendant was returned to custody in Colorado.  *Id.* at 309.

"It is not the province of a federal habeas court to reexamine state-court determinations on state-law questions.  In conducting habeas review, a federal court is limited to deciding whether a conviction violated the Constitution, laws, or treaties of the United States."  *Estelle v. McGuire*, 502 U.S. 62, 67–68 (1991).  Thus, a habeas applicant cannot assert a claim under § 2254 for a violation of state procedure unless it infringes a specific federal constitutional protection.  *Id.  See also Dockins v. Hines*, 374 F.3d 935, 940 (10th Cir. 2004) ("Federal habeas courts will not ... review issues of purely state law.").

A state court's failure to properly apply a state statute of limitations does not violate due process or any other provision of the Constitution or a federal statute, and thus does not provide a basis for granting a writ of habeas corpus.  *Belvin v. Addison*, 561 F. App'x 684, 686 (10th Cir. 2014); *see also Burns v. Lafler*, 328 F.Supp.2d 711, 719 (E.D. Mich. 2004) (collecting cases).  Thus,

even if a misapplication occurred here, which I do not find, Mr. Johnson gives no reason to believe it violated his federal due process rights.  Thus, he is not entitled to habeas corpus relief as to this claim.  *Accord Erickson v. Sec'y. for the Dep't. of Corr.*, 243 F. App'x 524, *7-8 (11th Cir. 2007) (where state courts rejected applicant's claim that his conviction violated state statute of limitations by concluding that the offense was "continuous," applicant failed to state a cognizable due process violation or any other "question of a constitutional nature"); *Loeblein v. Dormire*, 229 F.3d 724, 726 (8th Cir. 2000) (a state court's failure properly to apply a state statute of limitations does not violate due process "or, indeed, any other provision of the Constitution or a federal statute.").

Moreover, Applicant's claim does not state a violation of his Due Process Rights. In this regard, the Due Process Clause requires that a criminal statute must give fair warning of the conduct that it makes a crime.  " 'The ... principle is that no man shall be held criminally responsible for conduct which he could not reasonably understand to be proscribed.' "  *Bouie v. City of Columbia*, 378 U.S. 347, 351 (1964) (quoting *United States v. Harriss*, 347 U.S. 612, 617 (1954)).

> There are three related manifestations of the fair warning requirement. First, the vagueness doctrine bars enforcement of a statute which either forbids or requires the doing of an act in terms so vague that men of common intelligence must necessarily guess at its meaning and differ as to its application.  Second, as a sort of junior version of the vagueness doctrine, the canon of strict construction of criminal statutes, or rule of lenity, ensures fair warning by so resolving ambiguity in a criminal statute as to apply it only to conduct clearly covered.  Third, although clarity at the requisite level may be supplied by judicial gloss on an otherwise uncertain statute, due process bars courts from applying a novel construction of a criminal statute to conduct that neither the statute nor any prior judicial decision has fairly disclosed to be within its scope.  In each of these guises, the touchstone is whether the statute, either standing alone or as construed, made it reasonably clear at the relevant time that the defendant's conduct was criminal.

*United States v. Lanier*, 520 U.S. 259, 265-267 (1997) (internal quotations and citations omitted).

In the case at bar, Mr. Johnson was convicted of Escape in violation of C.S.A. § 18-8-208(1),

which, in 1975, provided as follows.

> (1)    A person commits a class 2 felony if, while being in custody or confinement under a sentence following conviction of a class 1 or class 2 felony, he knowingly escapes from said custody or confinement.

In his state court proceeding, Mr. Johnson argued that, because the definition of the crime of "escape" emphasizes the element of departure, and does not mention subsequent conduct, the crime of escape was therefore a discrete act that was complete upon escape from custody and did not continue while the escapee remained at large.   The CCA disagreed, however, and determined that the offense was "continuing" in nature utilizing the federal framework set forth in *Toussie v. United States*, 397 U.S. 112, 115 (1970) (holding that, in certain circumstances, a crime continues beyond the first moment when all its substantive elements are satisfied).   *Johnson*, 327 P.3d at 308-09.   The Court noted that its interpretation was consistent with the vast majority of other jurisdictions that had considered this issue, including the United States Supreme Court.   *Id.*

> First, we think it clear beyond peradventure that escape from federal custody as defined in § 751(a) is a continuing offense and that an escapee can be held liable for failure to return to custody as well as for his initial departure.   Given the continuing threat to society posed by an escaped prisoner, the nature of the crime involved is such that Congress must assuredly have intended that it be treated as a continuing one.   Moreover, every federal court that has considered this issue has held, either explicitly or implicitly, that § 751(a) defines a continuing offense.

*United States v. Bailey*, 444 U.S. 394, 413 1980).

In order to be entitled to relief, Mr. Johnson must show that the CCA's determination that the Colorado Escape statute is a continuing offense is an unreasonable application of Supreme Court precedent.   This he has failed to do.   Thus, he is not entitled to relief as to this claim.

### E. Denial of Evidence

Mr. Johnson next argues that he was denied due process when the trial court excluded

16

relevant evidence that explained the circumstances leading up to his escape. A claim that one was denied "due process" is a claim that one was denied "fundamental fairness." *See Riggins v. Nevada*, 504 U.S. 127, 149 (1992) ("We have said that 'the Due Process Clause guarantees the fundamental elements of fairness in a criminal trial' "); *Lisenba v. California*, 314 U.S. 219, 236 (1941) ("The aim of the requirement of due process is ... to prevent fundamental unfairness").

Thus, a federal court must keep in mind the standard of review to be applied to allegations of trial error. In this regard, criminal defendants in this country are entitled to a fair, but not a perfect, trial. "[G]iven the myriad safeguards provided to assure a fair trial, and taking into account the reality of the human fallibility of the participants, there can be no such thing as an error-free, perfect trial," and the Constitution does not demand one. *United States v. Hasting*, 461 U.S. 499 (1983) (internal citations omitted). This focus on fairness, rather than on perfection, protects society from individuals who have been duly and fairly convicted of crimes, thereby promoting "public respect for the criminal process." *Delaware v. Van Arsdall*, 475 U.S. 673, 681 (1986).

> In the field of criminal law, we have defined the category of infractions that violate fundamental fairness very narrowly based on the recognition that, beyond the specific guarantees enumerated in the Bill of Rights, the Due Process Clause has limited operation. The Bill of Rights speaks in explicit terms to many aspects of criminal procedure, and the expansion of those constitutional guarantees under the open-ended rubric of the Due Process Clause invites undue interference with both considered legislative judgments and the careful balance that the Constitution strikes between liberty and order.

*Medina v. California*, 505 U.S. 437, 443 (1992) (internal quotations and citations omitted).

With this in mind, the Supreme Court developed what is known as the "harmless error" rule. In *Brecht v. Abrahamson*, 507 U.S. 619 (1993), the Supreme Court set forth the standard for harmless error in habeas cases involving constitutional trial flaws. In *Brecht*, the Supreme Court held that habeas relief is available only where the error "had substantial and injurious effect or influence in determining the jury's verdict." *Id.* at 623 (quoting *Kotteakos v. United States*, 328 U.S. 750, 776 (1946)). To meet this standard, there must be more than the "reasonable possibility" that the error contributed to the jury's determination of guilt. *Brecht*, 507 U.S. at 637. *See also Fry v. Pliler*, 551 U.S. 112 (2007). When a federal judge in a habeas proceeding is in grave doubt about whether a trial error of federal law had substantial and injurious effect or influence in determining the jury's verdict, that error is not harmless. *O'Neal v. McAninch*, 513 U.S. 432, 436 (1995).

Mr. Johnson sought to introduce the following evidence under a *res gestae* theory. While he was serving his initial sentence for murder, prison officials informed him of threats against his life and suggested that he escape; and prison officials enabled his escape by driving him to a field next to a road and leaving him there, unsupervised. He argues, and the People concede, that this evidence would be relevant to explain the circumstances of the crime, and defendant's mental state during the crime.

*Res gestae* is a theory of relevance which recognizes that certain evidence is relevant because of its unique relationship to the charged crime. *People v. Rollins*, 892 P.2d 866, 872–73 (Colo. 1995) (" Res gestae evidence is ... incidental to the main fact and explanatory of it, ... [and is] so closely connected therewith as to constitute a part of the transaction, and without knowledge of which the main fact might not be properly understood.") (internal quotations omitted); *People v. Quintana*, 882 P.2d 1366, 1373 (Colo. 1994) (explaining that *res gestae* evidence is "generally

linked in time and circumstances with the charged crime, forms an integral and natural part of an account of a crime, or is necessary to complete the story of the crime for the jury.") (internal quotations omitted).

In assessing this claim, the CCA found that any error in denying the admission of this evidence was harmless because exclusion of the evidence inured to defendant's benefit. *Johnson*, 327 P.3d at 310. Specifically, the Court held that "[h]ad evidence of the circumstances surrounding defendant's escape been admitted, it would have tended to prove that he knowingly escaped, thus establishing an essential element of the prosecution's case." *Id.* Applicant has failed to demonstrate that the decision of the Colorado Court regarding the trial court's decision denying the admission of the evidence was clearly contrary to federal law or an unreasonable application of federal law. Nor has he shown that the trial court's refusal to allow the evidence had a "substantial and injurious effect or influence" on the jury's verdict. Consequently, he is not entitled to habeas corpus relief as to this claim.

### F. Choice of Evils Defense

Next, Mr. Johnson argues that he was denied due process because the trial court refused to instruct the jury on the "choice of evils" defense. The Constitution guarantees an accused the right to present a complete defense. *Holmes v. South Carolina*, 547 U.S. 319, 324 (2006). That right, however, is not absolute and states have broad latitude under the Constitution to establish rules excluding evidence from criminal trials. *United States v. Scheffer*, 523 U.S. 303, 308 (1998). Further, the Constitution permits judges to exclude evidence that is repetitive, only marginally relevant or poses an undue risk of harassment, prejudice, or confusion of the issues. *Holmes*, 547 U.S. at 326–27 (internal quotation marks and citations omitted).

19

Here, the CCA reviewed Applicant's claim and held as follows.

> Defendant further contends that the trial court erred in not giving the jury an instruction on the "choice of evils" affirmative defense.  We disagree.

> We review *de novo* whether the evidence in the record, considered in the light most favorable to the defendant, is substantial and sufficient in both quantity and quality to warrant the giving of the affirmative defense instruction.

> To raise an affirmative defense, a defendant need only present "some credible evidence" supporting the defense.  § 18–1–407(1), C.R.S.2012.  This relatively low, "scintilla of evidence" standard means that the evidence necessary to justify an affirmative defense instruction may come solely from the defendant's testimony, even if the evidence is improbable.

> Ordinarily, for the defense of choice of evils to be available, it must be shown that the defendant's conduct was necessitated by a specific and imminent threat of injury to his person under circumstances which left the defendant no reasonable alternative other than to commit the crime of which he is charged.  However, if the charge is escape, the defendant must also show that he or she (1) committed the escape without violence, and (2) submitted to authorities voluntarily after reaching a position of safety.

> Here, defendant presented no evidence that he voluntarily submitted to authorities as soon as he reached a position of safety.  On the contrary, he eluded capture for thirty-two years.  Therefore, the trial court did not err in refusing to instruct the jury on the "choice of evils" affirmative defense.

*Johnson*, 327 P.3d at 310 (internal quotations and citation omitted).

 In be eligible for habeas relief on this claim, Applicant must show relevant Supreme Court precedent that holds that the Constitution requires that a defendant be able to present an affirmative defense in a similar situation.  This he has failed to do.  Nor has this Court found any such precedent.  Because no Supreme court case confront's the specific issue presented by this case, the CCA's holding can not be a contrary application.  Nor is it an unreasonable application of federal law.  Consequently, he  is not entitled to habeas corpus relief as to this claim.

**G. Outrageous Government Conduct**

Next, Applicant claims he was denied due process as a result of outrageous government conduct. Specifically, he alleges that prison officials drove him to a field and "advised him to leave" the vehicle because of death threats against him. The CCA refused to discuss this claim noting that the trial court had denied Applicant's motion for dismissal of the charges as untimely. Accordingly, this claim is procedurally barred. Notwithstanding, it fails to state a claim upon which habeas relief may be granted.

In this regard, the notion that outrageous government conduct can violate the Due Process Clause of the Fifth Amendment has its roots in the Supreme Court's entrapment decisions, in which the Court recognized that "the federal courts have an obligation to set their face against enforcement of the law by lawless means or means that violate rationally vindicated standards of justice, and to refuse to sustain such methods by effectuating them." *Sherman v. United States*, 356 U.S. 369, 380 (1958). In *United States v. Russell*, 411 U.S. 423 (1973), the Supreme Court first recognized the possibility that it "may some day be presented with a situation in which the conduct of law enforcement is so outrageous that due process principles would absolutely bar the government form invoking judicial processes to obtain a conviction." *Id*. at 431–32 (citing *Rochin v. California*, 342 U.S. 165 (1952)).

In *Hampton v. United States*, 425 U.S. 484 (1976), the Court narrowed the outrageousness doctrine alluded to in *Russell*, holding that "[t]he limitations of the Due Process Clause of the Fifth Amendment come into play only when the Government activity in question violates some protected right of the Defendant." *Id*. at 490. The Court explained:

21

> To sustain petitioner's contention here would run directly contrary to our statement in *Russell* that the defense of entrapment is not intended "to give the federal judiciary a 'chancellor's foot' veto over law enforcement practices of which it did not approve. The execution of the federal laws under our Constitution is confided primarily to the Executive Branch of the Government, subject to applicable constitutional and statutory limitations and to judicially fashioned rules to enforce those limitations."

*Id*. at 490 (quoting *Russell*, 411 U.S. at 435).

Although some circuit courts acknowledge an outrageous government conduct defense, the Supreme Court has never applied the Due Process Clause to invalidate a conviction based on outrageous governmental inducement. Moreover, while the Court of Appeals for the Tenth Circuit has recognized the defense of outrageous government conduct, *United States v. Spivey*, 508 F.2d 146 (10th Cir. 1975), it has never rendered a decision upholding such a claim. "To succeed on an outrageous conduct defense, the defendant must show either (1) excessive government involvement in the creation of the crime, or (2) significant governmental coercion to induce the crime." *United States v. Pedraza*, 27 F.3d 1515, 1521 (10th Cir. 1994). The relevant inquiry when assessing claims of outrageous government conduct is whether, considering the totality of the circumstances the government's conduct is so shocking, outrageous and intolerable that it offends the universal sense of justice. *United States v. Lacey*, 86 F.3d 956, 964 (10th Cir. 1996) (internal quotations and citations omitted.

Here, Applicant alleges that prison officials drove him to a field and advised him to escape because of death threats against him. This allegation does not show any form of coercion. Even reading his allegations liberally, prison officials only offered applicant an opportunity to escape. There simply is no allegation he was coerced into escaping. As such, Applicant has not shown any

iolation of his Due Process Rights.  Consequently, he is not entitled to habeas corpus relief with respect to this claim.

### H. Double Jeopardy

Applicant's final claim is that his rights under the Double Jeopardy Clause were violated because an escape charge was brought in 1975, administratively dismissed in 1981; brought again in 2007 and dismissed in 2008; and then re-filed a third time in 2010.

The Double Jeopardy Clause of the Fifth Amendment provides, in pertinent part, "[N]or shall any person be subject for the same offense to be twice put in jeopardy of life or limb." U.S. Const. Amend. V.   The guarantee against double jeopardy consists of three separate constitutional protections:  1) it protects against a second prosecution for the same offense after acquittal; 2) it protects against a second prosecution for the same offense after conviction; and 3) it protects against multiple punishments for the same offense.  *United States v. Halper*, 490 U.S. 435, 440 (1989). Underlying this constitutional safeguard is the belief that 'the State with all its resources and power should not be allowed to make repeated attempts to convict an individual for an alleged offense, thereby subjecting him to embarrassment, expense and ordeal and compelling him to live in a continuing state of anxiety and insecurity, as well as enhancing the possibility that even though innocent he may be found guilty.  *United States v. Dinitz*, 424 U.S. 600, 606 (1976) (citations and quotations omitted).  Notwithstanding, the Double Jeopardy Clause does not guarantee that the State will vindicate its societal interest in the enforcement of the criminal laws "through the vehicle of a single proceeding for a given offense." *United States v. Jorn*, 400 U.S. 470, 484 (1971).

The protections afforded by the Double Jeopardy Clause are implicated only when the accused has actually been placed in jeopardy, which occurs when a jury is empaneled and sworn, or,

in a bench trial, when the judge begins to receive evidence. *United States v. Martin Linen Supply Co.*, 430 U.S. 564, 569 (1977). "Without risk of a determination of guilt, jeopardy does not attach, and neither an appeal nor further prosecution constitutes double jeopardy." *Serfass v. United States*, 420 U.S. 377, 391-2 (1975).

Here, Applicant was never in jeopardy from the 1975 or 2007 charges; each was dismissed before a jury was empaneled and sworn or the court took evidence. Thus, Applicant cannot have suffered a "double" jeopardy violation by being tried, in 2010, on the reinstated 2007 charge. Consequently, he is not entitled to relief on this claim.

### H. Conclusion

Accordingly, it is

**ORDERED** that the Amended Application for a Writ of Habeas Corpus Pursuant to 28 U.S.C. § 2254 (ECF No. 6) filed by Applicant, Robert C. Johnson, is **DENIED**. It is

**FURTHER ORDERED** that no certificate of appealability will issue because Applicant has not made a substantial showing of the denial of a constitutional right. It is

**FURTHER ORDERED** that this case is dismissed with prejudice.

DATED this 22nd day of September, 2015.

BY THE COURT:

_____
RAYMOND P. MOORE
United States District Judge